**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| KARL MEMARI, JAMES SCHILLER, and ROBERT VAUGHAN, Individually and on behalf of all others similarly situated, )<br><br>PLAINTIFFS, )<br><br>vs. )<br><br>PLY GEM PRIME HOLDINGS, INC.; PLY GEM HOLDINGS, INC.; PLY GEM INDUSTRIES, INC.; MWM HOLDINGS, INC.; AND MW MANUFACTURERS, INC.,<br><br>DEFENDANTS. ) | C.A. NO. 2:13-cv-850-RMG<br><br><br><br><br>**SECOND AMENDED COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiffs, Karl Memari, James Schiller and Robert Vaughan ("Plaintiffs"), by and through his undersigned counsel, on behalf of themselves and all other persons and entities similarly situated, alleges:

**INTRODUCTION AND SUMMARY OF ACTION**

1.      Plaintiffs bring this action both individually and as a proposed class action against Defendants, Ply Gem Prime Holdings, Inc., Ply Gem Holdings, Inc., Ply Gem Industries, Inc., MWM Holdings, Inc. and MW Manufacturers, Inc. (Defendants hereinafter collectively referred to as "Ply Gem"), on behalf of themselves and all other similarly situated persons and entities, who currently own, per the class definition, Ply Gem vinyl clad or vinyl covered wood windows manufactured since July 1, 2002 (hereinafter collectively referred to as the "Class" or "Class Members").

2.      Plaintiffs and the Class are owners of structures that currently contain Ply Gem vinyl clad or vinyl covered wood window products (hereinafter "Vinyl Clad Windows").

Unknown to Plaintiffs and the Class, Ply Gem's Vinyl Clad Windows are illegal and/or contain defects that allow water to penetrate and leak into the interior of structures and behind cladding, resulting in premature deterioration of building components and other physical damage to both the windows and the surrounding structure. Ply Gem's acts and omissions in connection with its design, manufacture, marketing, advertising, and sale of its Vinyl Clad Windows constitute common law fraud/constructive fraud by omission/concealment, negligence, negligent misrepresentation, and breach of express and implied warranties.

## <u>PARTIES</u>

3.      Plaintiff Karl Memari is, and at all times relevant hereto, has been a citizen and resident of Charleston County, South Carolina. Specifically, Plaintiff resides in the Town of Mount Pleasant and his home was built circa 2005. Plaintiff's home contains Ply Gem Vinyl Clad Windows. Plaintiff's Vinyl Clad Windows are illegal and defective. These Vinyl Clad Windows are non-building code compliant and contain defects which permit water intrusion into his residence, damaging the same. Accordingly, Plaintiff must replace his Vinyl Clad Windows as well as repair the other property damage caused by the Defendants' illegal and/or defective windows at a significant cost to him.

4.      Plaintiff James Schiller is, and at all times relevant hereto, has been a citizen and resident of Charleston County, South Carolina. Specifically, Plaintiff resides in Mt. Pleasant and his home was built circa 2006. Plaintiff's home contains Ply Gem Vinyl Clad Windows. Plaintiff's Vinyl Clad Windows are illegal and defective. These Vinyl Clad Windows are non-building code compliant and contain defects which permit water intrusion into his residence, damaging the same. Accordingly, Plaintiff Schiller must replace his Vinyl Clad Windows as well as repair the other property damage caused by the Defendants' illegal and/or defective windows

2

at a significant cost to him.

5.      Plaintiff Robert Vaughan is, and at all times relevant hereto, has been a citizen and resident of Spartanburg County, South Carolina.  Specifically, Plaintiff Vaughan resides in Chesnee and his home was built circa 2004. Plaintiff's home contains Ply Gem Vinyl Clad Windows. Plaintiff's Vinyl Clad Windows are illegal and defective. These Vinyl Clad Windows are non-building code compliant and contain defects which permit water intrusion into his residence, damaging the same. Accordingly, Plaintiff must replace his Vinyl Clad Windows as well as repair the other property damage caused by the Defendants' illegal and/or defective windows at a significant cost to him.

6.      Defendant Ply Gem Prime Holdings, Inc. ("Ply Gem Prime") is a corporation organized and existing under the laws of the State of Delaware with its headquarters in Cary, North Carolina.

7.      Defendant Ply Gem Holdings, Inc. ("Ply Gem Holdings") is a corporation organized and existing under the laws of the State of Delaware with its headquarters and principal executive offices in Cary, North Carolina.  Defendant Ply Gem Holdings is a wholly owned subsidiary of Defendant Ply Gem Prime.

8.      Defendant Ply Gem Industries, Inc. ("Ply Gem Industries") is a corporation, organized and existing under the laws of the State of Delaware with its headquarters and principal executive offices in Cary, North Carolina.  Defendant Ply Gem Industries is a wholly owned subsidiary of Defendant Ply Gem Holdings, Inc.

9.      The Board of Directors for Ply Gem Prime, Ply Gem Holdings and Ply Gem Industries are identical.

10. Defendant MWM Holdings, Inc. ("MWM") is a corporation organized and existing under the laws of the State of Delaware. Defendant MWM is a wholly owned subsidiary of Defendant Ply Gem Industries.

11. Defendant MW Manufacturers, Inc. ("MW") is a corporation organized and existing under the laws of the State of Delaware. Defendant MW is a wholly owned subsidiary of Defendant MWM.

12. Defendant Ply Gem Prime owns and/or controls the other Defendants and they all collectively trade as "Ply Gem."

13. At all times relevant hereto, Ply Gem designed, marketed, advertised, warranted, sold, distributed, and/or delivered Vinyl Clad Windows in South Carolina and throughout the United States.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and cost, and because Ply Gem is a citizen of another State.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiffs and members of the proposed Class reside in this District. Furthermore, Ply Gem regularly transacts and solicits business in this District.

## COMMON FACTUAL ALLEGATIONS

16. Ply Gem is a leading manufacturer of residential exterior building products in North America, including new construction and replacement windows.

17.     Ply Gem's Vinyl Clad Windows are typically offered in a variety of styles, including single hung, double hung, casement, fixed, mulled, EZ tilt, awning, direct set and special shape windows, and are made of vinyl clad or vinyl covered wood frame windows.

18.     At all times relevant hereto, Ply Gem designed, manufactured, marketed, advertised, warranted and sold its Vinyl Clad Windows throughout much of the United States, including South Carolina.

19.     In conjunction with each sale, Ply Gem marketed and advertised that the Vinyl Clad Windows:

(a)     satisfied the third-party certification and labeling requirements promulgated by the International Residential Code ("IRC"); and

(b)     were merchantable, were reasonably fit for the ordinary purpose for which such goods were to be used, were free from defects in materials and workmanship and were acceptable in trade for the product description.

20.     Ply Gem knew or should have known the IRC was in effect in all or substantially all jurisdictions by July 1, 2002, and there were no material variations in the IRC's testing, labeling, certification, and performance requirements within those jurisdictions.

21.     Ply Gem knew or should have known that its Vinyl Clad Windows did not satisfy the testing, certification, labeling and performance requirements of the IRC.

22.     Concomitantly, Ply Gem knew or should have known that its Vinyl Clad Windows that failed to satisfy the IRC's testing, certification, labeling and performance requirements were illegal for use in jurisdictions that adopt the IRC.

23.     Ply Gem also knew or should have known that its Vinyl Clad Windows were defective in design, were not fit for their ordinary and intended use, were not merchantable, and

5

failed to perform in accordance with the advertisements, marketing materials and warranties disseminated by Ply Gem or with the reasonable expectations of ordinary consumers.

## The IRC's Certification and Labeling Requirements

24.     South Carolina and the jurisdictions therein have adopted the IRC as the applicable residential building code for all relevant time periods.

25.     Under the IRC, all window products must be tested in accordance with AAMA 101[1] and labeled with their resulting performance characteristics as determined by the AAMA 101 testing protocol.

26.     Under AAMA 101's testing protocol, a window's performance characteristics are measured by a group of three tests which assess a window's ability to withstand water infiltration, air infiltration, and wind loads.

27.     Specifically, AAMA 101 provides a three part performance grade testing requirement, which is comprised of the ASTM E-331 water penetration testing, ASTM E-283 air leakage testing as well as the ASTM E-330 structural testing.

28.     The resulting performance characteristics are then summarized in a four part description, which includes the class of product, type of product, performance grade (design pressure) rating, and maximum size of product tested.

29.     The performance grade equates to the highest positive Design Pressure Rating that the product achieved for both its structural rating and its commensurate water penetration rating and is therefore often simply referred to in the industry as the design pressure ("DP") rating.

---

[1]     AAMA/WDMA/101/I.S.2/NAFS,    AAMA/NWWDA/101/I.S.2,    and/or    AAMA/NWWDA101/I.S.2/NAFS (hereinafter referred to as "AAMA 101").

30.    In order to verify a window's performance characteristics, Section 6.13 of the IRC provides window performance must be continually certified by an approved third-party certification agency to demonstrate compliance with the IRC's testing and rating protocol as set forth by AAMA 101.

31.    The IRC further provides a third-party certification label must be affixed to the window identifying the window's approved inspection agency and performance characteristics as determined by said third-party agency.

32.    For example, 2006 IRC Section R.613.4   sets forth its requirements for manufacturers to comply with AAMA 101's testing and labeling protocol for windows:

> R613.4 Testing and labeling. Exterior windows and sliding doors *shall be tested by an approved independent laboratory, and bear a label identifying manufacturer, performance characteristics and approved inspection agency to indicate compliance with AAMA/WDMA/CSA 101/I.S.2/A440.*  (emphasis added).

33.    Under the third-party compliance inspection (or "certification") required by IRC Section R.613, third-party certification agencies review independent test reports for a manufacturer's series of window products and, where warranted, issue certifications to manufacturers that list the actual performance grade (DP) rating that a window tested to under AAMA 101.

34.    The third-party agencies then issue permanent certification (aka "gold") labels to manufacturers (or authorize manufacturers to print permanent certification labels) for placement in each window frame that should indicate the performance grade (DP) rating of that window as stated on its corresponding certification.

35.    Ply Gem typically applies two types of labels on their Vinyl Clad Windows, permanent "certification" labels and temporary "manufacturer" labels.

36.     Retailers, buyers, builders, consumers, installation contractors, and building code inspectors rely on the certification and manufacturer labels placed on the Vinyl Clad Windows to substantiate the performance characteristics represented by Ply Gem on said labels.

37.     The labels affixed to Ply Gem's Vinyl Clad Windows assure retailers, buyers, builders, consumers, installation contractors and building code inspectors that:

(a)     a sample of the same Vinyl Clad Window underwent performance testing measured by AAMA 101;

(b)     the Vinyl Clad Window sample passed the required performance tests under AAMA 101 for resistance to air leakage, water penetration and wind pressure;

(c)     the performance tests were conducted on the sample Vinyl Clad Window in the presence of an independent accredited lab technician; and

(d)     an approved, third-party agency has certified that Ply Gem's Vinyl Clad Window products are built to the same specifications as the sample Vinyl Clad Window tested.

38.     Installing windows with proper third-party certification is a vital safety issue for the buying public.

39.     Following one or more high wind/rain events or usage with the normal life expectancy of the window, the buying public will risk window failure with windows that do not satisfy the three-part testing under AAMA 101 and the IRC.

40.     Window failure typically includes water penetration and leakage into residential wood frame substrates, eventual deterioration of the wood substructure, trim, and finishes, and eventual lack of structural capacity for the windows to be anchored into the wood frame walls of a residence.

8

41.     At all times relevant hereto, Ply Gem has promoted, labeled and sold its Vinyl Clad Windows in violation of the IRC by: (a) failing to obtain certification, via a third-party agency, of the window's model series in compliance with AAMA 101; and (b) failing to affix, to the window itself, a label which (i) identifies the third-party agency performing the certification; and (ii) sets forth the performance characteristics that were certified.

42.     Ply Gem received pre-filing notice informing Ply Gem that its Vinyl Clad Windows did not satisfy the certification and labeling requirements of the IRC, and thus, were illegal for distribution in jurisdictions that adopt the IRC as the applicable building code.

43.     Ply Gem knew or should have known its Vinyl Clad Windows did not satisfy the testing, certification,  labeling and performance requirements of the IRC, but continued to market, advertise and sell these non-compliant Vinyl Clad Windows in the State of South Carolina directly to consumers, including homeowners and builders, as well as through its distribution/trade partners.

44.     When Ply Gem was sued by others, its Director of Compliance and Engineering, Arthur Travis, and Director of Marketing, Chris Pickering, admitted under oath the uncertified, non-compliant nature of these windows.

45.     In essence, Ply Gem knew, prior to the sale to Plaintiffs and the Class, that its Vinyl Clad Windows did not satisfy the testing, certification, labeling and performance requirements of the IRC. Nevertheless, Ply Gem designed, manufactured, marketed, advertised, labeled and sold its Vinyl Clad Windows as third-party certified when either: (a) the certification was unsubstantiated; or (b) the certification never existed.

46.     Such false and misleading certification representations are inherently misleading to consumers of Ply Gem's Vinyl Clad Windows, including Plaintiffs and the Class Members.

9

47.     Plaintiffs, the Class Members, and/or their respective builders would not have purchased and/or would not have authorized the purchase of the Vinyl Clad Windows for installation in their homes had they known or been informed that the Vinyl Clad Windows failed to satisfy IRC third-party certification and labeling requirements.

48.     Unaware of the falsity of Ply Gem's certification representations, Plaintiffs, the Class Members, and/or their predecessors, builders, and/or assignors, purchased these illegal and defective Vinyl Clad Windows, and as a result, have been damaged in the amount it will cost to replace said windows.

## Ply Gem's Defective Vinyl Clad Windows

49.     Upon information and belief, Ply Gem has sold, directly or indirectly (through distribution/trade partners), thousands of Vinyl Clad Windows in the State of South Carolina.

50.     Through various forms of media (including, by way of example, television, print ads, brochures, the Internet, on-site brochures and promotional documents, catalogs, and/or product labeling) as well as by oral affirmations, Ply Gem marketed, advertised and warranted that each Vinyl Clad Window was merchantable, fit for the ordinary purpose for which such goods were used and was free from defects in materials and workmanship and continues to so market, advertise and warrant its Vinyl Clad Windows.

51.     The Vinyl Clad Windows, however, contain defects that allow for water intrusion into the structures in which they are installed, damaging the interior areas of Plaintiffs' and the Class Members' residences. The Vinyl Clad Windows' defects cause the windows to deteriorate from the inside out without homeowner knowledge; this condition reduces the effectiveness and performance of the Vinyl Clad Windows and renders them unable to perform the ordinary purposes for which they are intended. Further, the defects allow for water to cause damage to

other surrounding property within the structures in which they are installed.

52.     Plaintiffs, the Class Members, and/or their predecessors, builders, and/or assignors would not have purchased and/or would not have authorized the purchase of the Vinyl Clad Windows for installation in their homes had they known or been informed of the material defects in the Vinyl Clad Windows.

53.     Ply Gem knew or should have known of defects existing within the Vinyl Clad Windows and the potential for water intrusion arising from said defects.

54.     Despite such knowledge, Ply Gem continued to manufacture, distribute, market and sell the Vinyl Clad Windows to unsuspecting consumers, builders and/or homeowners across the state of South Carolina as well as the country.

55.     Further, despite such knowledge, Ply Gem failed to notify all purchasers of the Vinyl Clad Windows of the defects or provide uniform relief even though Ply Gem can identify substantially all of its customers who have the illegal and/or defective Vinyl Clad Windows (through the records of Ply Gem and its distribution/trade partners).

56.     Instead, Ply Gem has concealed, suppressed, omitted, or otherwise knowingly and intentionally failed to disclose to Plaintiffs and the Class Members, whose homes contain Ply Gem Vinyl Clad Windows that the Vinyl Clad Windows are defective as described herein and will not prevent water intrusion.

57.     Consumers, including Plaintiffs and the Class Members, reasonably expect that their windows will not leak due to defective design and manufacturing processes.

58.     Further, consumers reasonably expect that if Ply Gem knew it had an inherent defect/defects in its windows that would potentially result in leakage:

(a)     that a manufacturer such as Ply Gem would make a disclosure to consumers if it

11

determined that the leakage risk was substantial; and

(b)     that a manufacturer such as Ply Gem would repair the latent defect(s) -- even if
        the defect(s) did not exhibit until after expiration of the warranty period --
        because the potential causes of the defect are within the control and responsibility
        of the manufacturer (not the consumer).

59.     Even though Ply Gem can identify substantially all of its customers who have the
defective Vinyl Clad Windows, Ply Gem has never: (1) publicized the defective and dangerous
nature of the Vinyl Clad Windows; (2) took affirmative steps to notify its customers that the
Vinyl Clad Windows were defective and potentially cause significant damage to other property
around the window frame; and/or (3) recalled the defective Vinyl Clad Windows.

60.     In sum, Ply Gem knew, prior to the sale to Plaintiffs and the Class Members that,
for the indefinite future, there was a substantial risk and probability that its Vinyl Clad Windows
would leak, deteriorate, and cause consequential damage.  Nevertheless, Ply Gem failed to
disclose that risk and thereby deprived consumers of the opportunity to negotiate additional
warranty coverage, negotiate a lower price to reflect the risk or simply avoid the risk altogether
by purchasing a different manufacturer's windows. Thereafter, the undisclosed risk occurred –
Plaintiffs' windows (and many others) have leaked – and Plaintiffs and the Class Members have
been damaged in the amount it will cost, or they paid, to repair the condition.

**Ply Gem's Vinyl Clad Window Warranty**

61.     Plaintiffs' and the Class Members' Vinyl Clad Windows were sold with an
express warranty that is: (a) limited in duration to ten (10) years and to the cost of replacement
windows only; and (b) limited to only the original owner of the windows.  Ply Gem's Vinyl Clad
Windows, however, often fail during their expected useful life because of their illegal and/or

defective nature.  Despite Ply Gem's knowledge that its Vinyl Clad Windows often will fail during their useful life, Ply Gem does not include in its warranty coverage the labor and/or installation costs associated with window replacement or provide coverage for subsequent purchasers of residences/structures with the Vinyl Clad Windows.

62.     Assignment of warranty rights, express or implied, is the typical practice in the industry, and upon information and belief, Plaintiffs and the Class Members are the assignees of the builder's/developer's warranty rights associated with Ply Gem's Vinyl Clad Windows.

63.     Plaintiffs and the Class Members, who repair/repaired their illegal and/or defective Vinyl Clad Windows during the warranty period, are/were required to pay for the cost of labor associated with said repairs and/or the installation of replacement windows; the amount charged for such labor and replacement is significant.

64.     In addition, the Vinyl Clad Windows have caused damage to other property within Plaintiffs' and Class Members' residences/structures because the windows allow for water intrusion into the interior building components surrounding the windows.

65.     Plaintiffs and Class Members have not received the value for which their builders and/or original homeowners bargained for when they purchased the Vinyl Clad Windows.  There is a substantial difference in value between the Vinyl Clad Windows as represented and warranted and the Vinyl Clad Windows as purchased coupled with an ineffective warranty.

66.     The value of structures containing the Vinyl Clad Windows has diminished as a result of the Vinyl Clad Window's illegal and/or defective condition. In order to sell their homes, Plaintiffs and Class Members would either have to disclose the present condition of the Vinyl Clad Windows and accept a reduced sales price or pay for the cost to repair the Vinyl Clad Windows.

## ESTOPPEL FROM PLEADING AND TOLLING OF
## APPLICABLE STATUTES OF LIMITATIONS/REPOSE

67.     Ply Gem is estopped from relying on any statutes of limitation or repose by virtue of its acts of fraudulent concealment.  Upon information and belief, Ply Gem had knowledge its Vinyl Clad Windows were defective and/or illegal for years and has actively concealed from purchasers/owners of the Vinyl Clad Windows and/or failed to alert the purchasers/owners of the defective and/or illegal nature of the Vinyl Clad Windows.

68.     Ply Gem had a duty to inform Plaintiffs and Class Members of the defects described herein, which it knew or should have known. Notwithstanding its duty, Ply Gem never disclosed the defects or certification misrepresentations to Plaintiffs, the Class Members and/or their respective builders.

69.     Despite exercising reasonable diligence, Plaintiffs and the Class Members could not have discovered the defective and/or illegal condition of the Vinyl Clad Windows.

70.     Given Ply Gem's failure to disclose this non-public information about the defective and/or illegal nature of the Vinyl Clad Windows – information over which it had exclusive control – and because Plaintiffs and the Class Members therefore could not reasonably have known that the Vinyl Clad Windows were defective and/or illegal, Ply Gem is estopped from relying on any statutes of limitations and/or repose that might otherwise be applicable to the claims asserted herein.

## CLASS ALLEGATIONS

71.     Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following Class:

<u>South Carolina Putative Class</u>
All persons and entities that own a structure located within the
State of South Carolina in which Ply Gem's Vinyl Clad Wood
Windows are installed.

Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members

of their families; (b) Ply Gem and any entity in which Ply Gem has a controlling interest or

which has a controlling interest in Ply Gem and its legal representatives, assigns and successors

of Ply Gem and Ply Gem employees; and (c) all persons who properly execute and file a timely

request for exclusion from the Class or are currently in litigation with Ply Gem.

72.     Plaintiffs propose the Class be divided into subclasses if and as necessary to align

class interests.

73.     *Numerosity*:   The Class is composed of thousands of persons geographically

dispersed throughout the State of South Carolina, the joinder of whom in one action is

impractical.  Moreover, upon information and belief, the Class is reasonably `ascertainable and

identifiable from Ply Gem records, Ply Gem's customer records, and/or identifying marks on the

Vinyl Clad Windows.

74.     *Commonality*:   Questions of law and fact common to the Class exist as to all

members of the Class and predominate over any questions affecting only individual members of

the Class.  These common legal and factual issues include the following:

(a)     Whether the Vinyl Clad Windows are defective;

(b)     Whether the Vinyl Clad Windows are illegal, or stated differently, whether they
        are prohibited from use under the Building Code;

(c)     Whether the Vinyl Windows have not performed or will not perform in
        accordance with the reasonable expectations of ordinary consumers;

15

(d)    Whether Ply Gem knew or should have known of the defects and/or illegality of the windows;

(e)    Whether Ply Gem concealed from consumers and/or failed to disclose to consumers the defects and/or illegality of the windows;

(f)    Whether Defendants have acted or refused to act on grounds generally applicable to the Classes;

(g)    Whether Ply Gem should be declared financially responsible for failure to notify all Class Members of the defective and/or illegal nature of the Vinyl Clad Windows and to pay the full costs and expenses of repair and/or replacement of the windows;

(h)    Whether Ply Gem knew or became aware that its Vinyl Clad Windows were defective and/or illegal, yet continued to manufacture, distribute and sell the windows without: (1) informing consumers, purchasers, builders and/or homeowners of the material defects and/or illegality; (2) recalling the defective and/or illegal windows; or (3) otherwise repairing the defective and/or illegal windows that had already been purchased;

(i)    Whether Ply Gem's expertise, superiority and financial interest in sales transactions gave rise to a duty to disclose the material facts concealed, thereby, giving rise to a claim for fraudulent concealment;

(j)    Whether Plaintiffs and the Class are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Class for replacement of Windows and/or installation costs as well as repair/replacement of other property damage caused by the

16

illegal/defective windows; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Vinyl Clad Windows as warranted and the Vinyl Clad Windows as purchased; and (iii) the reasonable costs to remove and replace the windows and to repair consequential damages.

(k)     Whether Ply Gem negligently designed and/or manufactured the Vinyl Clad Windows;

(l)     Whether Plaintiffs and the Class are entitled to replacement of their defective and/or illegal Vinyl Clad Windows with non-defective and/or legal windows;

(m)     Whether Plaintiffs and the Class are entitled to restitution and disgorgement from Ply Gem; and

(n)     Whether Plaintiffs and the Class are entitled to prejudgment interest, attorneys' fees and costs from Ply Gem.

75.     *Typicality*:  Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Ply Gem's conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective and/or illegal Vinyl Clad Windows, Ply Gem's conduct in concealing the defective and/or illegal condition of the Vinyl Clad Windows, and Plaintiffs' and Class Members' purchasing residences/structures with the defective and/or illegal Vinyl Clad Windows.

76.     *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the Class.  Plaintiffs have retained counsel experienced in the prosecution of construction defect claims and complex litigation, including consumer class actions involving product liability and product design

17

defects.

77.    *Predominance and Superiority*:  This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court and Courts throughout South Carolina would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

78.    Plaintiffs have acted on grounds generally applicable to the Class. Class certification is appropriate because Ply Gem engaged in a uniform and common practice. All Class Members have the same legal right to and interest in redress for damages associated with the defective and/or illegal Ply Gem Vinyl Clad Windows.

## FOR A FIRST CAUSE OF ACTION
**(By Plaintiffs Memari, Schiller and Vaughan, individually, and on behalf of all similarly situated residents of South Carolina for Common Law Fraud/Constructive Fraud by Omission/Concealment)**

79.    Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

80.    Ply Gem knew or should have known their Vinyl Clad Windows were defective and/or illegal.

81.     Ply Gem was in a position of superiority over Plaintiffs and the South Carolina Putative Class Members with respect to knowledge that its Vinyl Clad Windows were defective and/or illegal.

82.     By virtue of Ply Gem's superior knowledge and experience in designing, manufacturing, and distributing the windows, Plaintiffs, the Class Members, and/or their respective builders placed trust and confidence in Ply Gem, thereby placing Ply Gem in a position of superiority and influence over them.

83.     By its position of superiority and influence, Ply Gem knew of the falsity and materiality of its representations about the Vinyl Clad Windows and had a duty to disclose to consumers all material facts regarding the Vinyl Clad Windows, including that there was: (a) a significant risk of water leakage in and around the Vinyl Clad Windows; and (b) a significant risk that the Vinyl Clad Windows were not properly certified. Without Ply Gem's disclosure, consumers, including builders, would not know of the risk of leakage or invalid certification of the Vinyl Clad Windows.

84.     Plaintiffs, the Class Members, and/or their respective builders were ignorant of the falsity of Ply Gem's representations about the Vinyl Clad Windows and reasonably relied on Ply Gem to disclose these material facts.  If Ply Gem had disclosed these facts, then Plaintiffs and the Class Members could have, and would have, prevented economic injury by either negotiating additional warranty coverage, negotiating a lower price to reflect the risk, or simply avoided the risk by purchasing a different residence/structure or window.

85.     Ply Gem breached the aforementioned duty by failing to disclosure the defective and/or illegal nature of its Vinyl Clad Windows.

86.     Ply Gem also breached the aforementioned duty by falsely representing the performance of its Vinyl Clad Windows in window labels, marketing material, warranties and/or other affirmations associated with its Vinyl Clad Windows.

87.     Ply Gem knew of Plaintiffs' and the Class Member's ignorance as to the false representations regarding material characteristics of the Vinyl Clad Windows and had no reasonable grounds for their non-disclosures and false representations, yet intended Plaintiffs and the Class Members rely on and act upon these non-disclosures and false representations by purchasing the Vinyl Clad Windows.

88.     These non-disclosures and false representations were material and the same for Plaintiffs and all the Class Members.

89.     Plaintiffs, Class Members, their predecessors and builders had a right to rely upon Ply Gem's representations in their purchase of the Vinyl Clad Windows, and did rely on those representations; and as a proximate result of relying on and acting upon Ply Gem's false representations, Plaintiffs and Class Members have been consequentially and proximately injured.

## FOR A SECOND CAUSE OF ACTION
**(By Plaintiffs Memari, Schiller and Vaughan, individually, and on behalf of all similarly situated residents of South Carolina for Negligence)**

90.     Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

91.     Ply Gem was under a legal duty to exercise reasonable care to design, manufacture and distribute a window that would be reasonably safe for its intended use.

92.     Ply Gem breached its legal duty and was negligent in its design and/or manufacturer of its Vinyl Clad Windows described herein. Ply Gem's design and/or manufacture

of the Vinyl Clad Windows is inherently defective, in that the windows do not provide a weather tight seal and instead allow water leaks to occur into Plaintiffs' and the Class Members' residences/structures; and that the use of the Vinyl Clad Windows is inherently illegal, as the Vinyl Clad Windows are not tested, certified, and/or labeled in compliance with applicable building codes.

93.    As a result of the defects described herein, water has intruded and caused damages to the interior finishes, walls, floors and other property within Plaintiffs' and the Class Members' residences/structures.

94.    As a result of Ply Gem's non-compliant third-party certification and labeling practices, Plaintiffs' and the Class Members' residences contain illegal and/or defective Vinyl Clad Windows that  require replacement as well as repair of damages incidental thereto.

95.    Plaintiffs and the Class Members have been exposed to a substantial and unreasonable risk of foreseeable harm and damage to their property as a result of Ply Gem's defective and/or illegal Vinyl Clad Windows. Ply Gem knew or, in the exercise of reasonable care, should have known that its Vinyl Clad Windows were negligently designed and/or manufactured to allow for water intrusion into Plaintiffs' and the Class Members' homes, and that such water intrusion will cause extensive deterioration to building components as well as damage to interior building finishes and personal property.  Ply Gem knew or, in the exercise of reasonable care, should have known that its Vinyl Clad Windows were negligently designed and/or manufactured in violation of the IRC's third-party certification and labeling requirements.

96.    Ply Gem possessed the knowledge to cure the defects in the Vinyl Clad Windows and the ability to design alternative windows so that water would not leak into Plaintiffs' and the Class Members' residences/structures.

97.     Ply Gem possessed the knowledge to cure the illegality of the Vinyl Clad Windows and the ability to design alternative windows which would satisfy the IRC's third-party certification and labeling requirements.

98.     As a direct, proximate, reasonably probable and foreseeable consequence of Ply Gem's negligent acts and/or omissions in connection with its design, manufacture and distribution of its Vinyl Clad Windows, Plaintiffs and the Class Members have suffered and will continue to suffer loss and damage to their residences/structures and their property.

**FOR A THIRD CAUSE OF ACTION**
**(By Plaintiffs Memari, Schiller and Vaughan, individually, and on behalf of all similarly situated residents of South Carolina for Negligent Misrepresentation)**

99.     Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

100.    Ply Gem had a pecuniary interest in making representations about material characteristics of the Vinyl Clad Windows to Plaintiffs and the Class Members.

101.    Ply Gem's pecuniary interest in and special knowledge of its Vinyl Clad Windows placed Ply Gem under a legal duty to convey truthful information about said windows during the course of its business.

102.    Concomitantly, Ply Gem was under a separate legal duty to communicate truthful information to Plaintiffs and the Class Members for guidance in their business transactions associated with the Vinyl Clad Windows.

103.    Ply Gem breached the aforementioned duties by failing to exercise due care and was negligent by making false representations to Plaintiffs and the Class Members that were not true regarding the performance of its Vinyl Clad Windows.

104.    Specifically, Ply Gem has adopted, promulgated, represented and benefitted from inaccurate window labels, marketing material, warranties and/or other affirmations associated with the performance of its Vinyl Clad Windows.

105.    Ply Gem's window labels, marketing materials, warranties and/or other affirmations do not substantiate the actual performance characteristics of its Vinyl Clad Windows, which the required testing and third-party certification, if performed as prescribed by the IRC, would have accomplished.

106.    Ply Gem knew or should have known their testing and certification method was incorrect and that they were providing unsubstantiated performance characteristics and window labels for their Vinyl Clad Windows that did not comply with the IRC.

107.    Nevertheless, Ply Gem continued to affix these non-compliant window labels, that also contained unsubstantiated performance characteristic descriptions, on its Vinyl Clad Windows, which Ply Gem then placed into the stream of commerce.

108.    Ply Gem also promoted and advertised the unsubstantiated performance characteristics of its Vinyl Clad Windows via other affirmations, product descriptions and/or marketing material.

109.    These false statements are material because the performance characteristics and window labels provide a necessary tool for comparison for consumers when evaluating homes to purchase and/or warranties associated with said purchase.

110.    These false representations by mislabeling were the same for Plaintiffs and all the Class Members.

111.    Ply Gem had no reasonable grounds for believing these misrepresentations were true when initially made and subsequently continued, yet intended Plaintiffs and the Class Members rely of these misrepresentations.

112.    Plaintiffs and the Class Members justifiably relied on Ply Gem's misrepresentations, and as a direct, proximate, reasonably probable and foreseeable consequence of Ply Gem's negligent acts and/or omissions in connection with its labeling, marketing, promotion and distribution of its Vinyl Clad Windows, Plaintiffs and the Class Members have suffered and will continue to suffer harm, including pecuniary loss as a proximate result of their reliance on Ply Gem's false representations about the Vinyl Clad Windows.

**FOR A FOURTH CAUSE OF ACTION**
**(By Plaintiffs Memari, Schiller and Vaughan, individually, and on behalf of all similarly situated residents of South Carolina for Breach of Express and Implied Warranties)**

113.    Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

114.    Ply Gem's Vinyl Clad Windows installed in structures owned by Plaintiffs and the Class Members were defectively made and illegally distributed, having left Ply Gem's manufacturing facilities with latent defects and improper third-party certification and labeling.

115.    At all times relevant hereto, there were duties imposed by law that require a manufacturer's or seller's product be merchantable, free from latent defects, reasonably fit for the ordinary purpose(s) for which such product  is to be used, and that such product be acceptable in trade for the product description.

116.    At all times relevant hereto, Ply Gem expressly represented and/or warranted its Vinyl Clad Windows as merchantable, free from latent defects, reasonably fit and appropriate for

24

their intended use and ordinary purpose, and acceptable in trade based on their advertised product description.

117.    Notwithstanding the aforementioned duties and express warranty, at the time of delivery, Ply Gem's Vinyl Clad Windows sold to Plaintiffs and the Class Members were not merchantable, not free of latent defects, not reasonably fit for their intended use and ordinary purpose and not acceptable in trade based upon their product description.

118.    As documented in its own business records and elsewhere, Ply Gem knew its Vinyl Clad windows contained defects, had improper third-party certification (or lacked certification entirely) and/or had improper third-party labeling prior to or within a reasonable time after the latent defect(s) and/or illegalities manifested  themselves to Plaintiffs and the Class Members.

119.    In light of such notice, Ply Gem was aware its Vinyl Clad Windows were not merchantable, not free from latent defects, not reasonably fit for their intended use and ordinary purpose and not accepted in trade based upon their product description.

120.    By designing, manufacturing, advertising, distributing and selling illegal and/or defective Vinyl Clad Windows, as described above, Ply Gem has breached its implied and express warranties with Plaintiffs and the Class Members.

121.    As a direct and proximate result of Ply Gem's breach of the express and implied warranties associated with its Vinyl Clad Windows, Plaintiffs and Class Members have suffered actual and consequential damages.

122.    As Ply Gem knew its Vinyl Clad Windows were defective and illegal at the time of sale, all limitations in the express warranty are unconscionable and void as a matter of law.

123.    Plaintiffs' counsel is entitled to recover their reasonable attorney's fees and expenses as a result of the conference of a pecuniary benefit on behalf of the Class Members, and will seek an award of such fees and expenses at the appropriate time.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated in South Carolina, prays the Court enter judgment against Ply Gem as follows:

(a)    for an order certifying the South Carolina Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representative of the Class, and appointing the undersigned law firm representing Plaintiffs as counsel for the Class;

(b)     for actual and compensatory damages sustained by Plaintiffs and the South Carolina Class;

(c)    for punitive damages;

(d)    for equitable and/or injunctive relief for the South Carolina Class;

(e)    for payment of costs of suit herein incurred;

(f)    for both pre-judgment and post-judgment interest on any amounts awarded;

(g)    for payment of reasonable attorneys' fees and expenses as may be allowable under applicable law; and

(h)    for such other and further relief as the Court may deem just and proper.

*(Signature on Following Page)*

JUSTIN O'TOOLE LUCEY, P.A.

By:  s/Justin Lucey_____
Justin Lucey (Fed. ID No. 5613)
Stephanie Drawdy (Fed. ID No. 9996)
Dabny Lynn (Fed. ID No. 11411)
415 Mill Street
Post Office Box 806
Mount Pleasant, SC 29465-0806
T: (843) 849-8400
F: (843) 849-8406
Email: jlucey@lucey-law.com

February 10, 2014
Charleston, South Carolina